# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TENNESSEE
# WESTERN DIVISION

| | |
|---|---|
| STEPHANIE GAMBLE, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>) No. 15-cv-2789-SHL-dkv<br>)<br>SITEL OPERATING CORPORATION and )<br>MEREDITH ASHLEIGH FARMER, )<br>)<br>Defendants. )<br>) | |

## ORDER ADOPTING MAGISTRATE'S REPORT AND RECOMMENDATION

Before the Court is the Magistrate's Report and Recommendation for Partial *Sua Sponte* Dismissal (the "Report and Recommendation"). (ECF No. 9.) *Pro se* Plaintiff Stephanie Gamble ("Ms. Gamble") filed a Complaint against Defendants Sitel Operating Corporation ("Sitel") and Meredith Ashleigh Farmer ("Ms. Farmer"), alleging gender discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"), and disability discrimination in violation of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12112 ("ADA"). (ECF No. 1.) In the Report and Recommendation, the Magistrate recommended dismissing Ms. Gamble's gender and disability discrimination claims against Ms. Farmer for failure to state a claim. (ECF No. 9 at 2.) The Magistrate also recommended dismissing Ms. Gamble's gender discrimination claim against Sitel for failure to state a claim, and permitting Ms. Gamble to amend her disability claim against Sitel. (Id.) Ms. Gamble filed an objection to the Report and Recommendation ("Objection"). (ECF No. 10.) For the reasons discussed below, the Court **ADOPTS** the Report and Recommendation in its entirety, and dismisses Ms. Gamble's claims against Ms. Farmer and her gender discrimination claim against Sitel with prejudice. In reviewing Ms. Gamble's Objection, it appears that Ms. Gamble

attempted to amend her Complaint in the Objection, which is not the proper procedure. Therefore, Ms. Gamble is **ORDERED** to file an Amended Complaint on the Court-supplied Complaint form, pleading the factual allegations in support of her disability claim against Sitel based on failure to provide reasonable accommodation, her sole remaining claim.

I. STATEMENT OF THE CASE

    A. Factual Allegations Contained in the Objection

The following recitation of the facts is taken from the Objection Ms. Gamble filed.[1] Ms. Gamble, who is allegedly disabled, was hired by Sitel as a customer-relations phone operator in August, 2013. She alleges that she suffered gender and disability discrimination from October, 2013 until April 14, 2014, the date that she resigned from Sitel. (ECF No. 1 at 2; ECF No. 1-2 at 1.) Ms. Gamble filed her Complaint on a court-supplied form, in which she checked a box for each of the following types of "discriminatory conduct" she allegedly suffered: termination of employment; failure to promote; failure to accommodate disability; unequal terms and conditions of employment; retaliation; and Ms. Gamble inscribed the words "Equal Pay" in the box marked "Other acts." (ECF No. 1 at 3.) Ms. Gamble alleges that she was discriminated against and harassed by her supervisor, Ms. Farmer, when Ms. Farmer wrote Ms. Gamble up on October 26, 2013, and November 1, 2013, for excessive hold time between calls, and on January 10, 2014, for failure to adhere to "aux procedures." (ECF No. 1-2 at 1; ECF No. 10-2 at 5-10.) Ms. Gamble states that those write-ups were "punitive," and were actually caused

---

[1] As discussed above, Ms. Gamble has not submitted an amended complaint. However, the Court construes Ms. Gamble's Objection, and the documents attached thereto, as her attempt to amend her Complaint by providing further factual support for her claims. Given the lenient pleading standards afforded to pro se litigants, she shall be permitted to properly amend her Complaint.

2

by system errors, technical problems, and by Ms. Farmer intentionally manipulating Ms. Gamble's metric scores. (ECF No. 1-2 at 1-4.)

Ms. Gamble states that, at some point, she attempted to apply for a new position but was unable to because of a broken email link she received. (Id. at 3.) Additionally, she alleges that Ms. Farmer, at some later point, denied her a different position that she was also qualified for. (Id. at 4.)

Ms. Gamble filed two ADA accommodation requests with Sitel: the first on December 2, 2013, and the second on March 14, 2014. (Id. at 2, 5.) In her first request, Ms. Gamble stated that "system failure, system down time, and system/ACW [after call work] correction is cause [sic] more limitation such as panic disorder." (ECF No. 10-1 at 9.) Accordingly, she requested the following accommodations from Sitel: "learning period," job restructuring, modified system software equipment, reasonable time to access email, learning tools, and "block to be placed by in [sic] schedule." (Id.) Ms. Gamble states that Sitel denied her first request. (ECF No. 1-2 at 4.) Consequently, she made an internal complaint to the Human Resources Department on March 5, 2014.

On March 10, 2014, Ms. Reagan Freed ("Ms. Freed"), the Human Resources Director for Sitel, and Ms. Gamble spoke on the phone regarding Ms. Gamble's ADA request and internal complaint. During this conversation, it is alleged that Ms. Freed suggested that Ms. Gamble take additional breaks or maintain a reduced shift as an ADA accommodation. (Id.)

Ms. Gamble submitted a second ADA accommodation request on March 14, 2014, "for a reduced shift due to the pressure, harassments, and discriminating [sic] treatment on the job." (ECF No. 10-1 at 13.) In the request, Ms. Gamble states that her limitations include: "significant interence [sic] with my capacity to engage in competitive work duties[.] Emotional trauma and

my state of mind . . . has caused me to experience physical illness." (Id.) Accordingly, she asked for "time off due to medical issues" because her "mental and physical health is in jeopardy." (Id.)

Ms. Gamble states that she suffered an "on the job injury" on March 6, 2014, and took a leave of absence at the direction of her doctor for "work related medical issues."[2] (ECF No. 1-2 at 5.) On March 18, 2014, while still out of work, Ms. Gamble requested an additional two weeks off of work because of the "neglectful treatments that . . . caused or contributed to [her] mental and physical pain." (Id.) That request was approved by Selina Escobar, an HR representative, on the same day. (Id.) Ms. Escobar emailed Ms. Farmer stating that Ms. Gamble had been approved for a medical leave of absence from March 3 until April 1, 2014. (ECF No. 10-1 at 5.)

Although she was not scheduled to return to work until April 1, 2014, Ms. Gamble began contacting Ms. Freed on March 22, 2014, about returning. (ECF No. 10-1 at 13) On April 10, 2014, Ms. Freed informed Ms. Gamble that, before Ms. Freed could permit her to return to work, she would need to produce a note from her doctor indicating the exact date that she could return to work. (Id.) Ms. Gamble alleges that she had already submitted the proper documentation from her doctor to return to work, and states that Ms. Freed "never cleared [her to

---

[2] Ms. Gamble details the factual allegations of her claims in a statement she attached to her Complaint. However, the statement is very difficult to follow due to confusing sentences, unfinished thoughts and general stream-of-consciousness-like prose. Accordingly, the Court is not clear exactly when Ms. Gamble took her leave of absence as opposed to medical leave, although she was out of work from March 6, 2014, through April 14, 2014 – the date she resigned. (ECF No. 1-2 at 6.) Additionally, Ms. Gamble never states what her disability is in her Complaint or Objection. In fact, in her Complaint, she only referred to other documents as substantiating her disability: "I have also enclosed a medical certificate from my ADA medical provider that has the correct information on the nature of my medical condition and injury. This medical certificate also provides the correct seriousness of my injuries and the reason necessary [sic] to take the leave of absence." (ECF No. 1-2 at 5.) Ms. Gamble did not attach a medical certificate to her Complaint, but did attach one to her Objection. (ECF No. 10-3 at 8.)

return to work] because [Ms. Freed] had no intentions of clearing [Ms. Gamble] back to work." (ECF No. 1-2 at 6.) Ms. Freed, according to Ms. Gamble, failed to engage in a "good faith dialogue" with Ms. Gamble about returning to work. (ECF No. 1-2 at 6.) Ms. Gamble states that Ms. Freed's email was intended to "frustrate, aggravate, and prolong time" before Ms. Gamble could return to work. (ECF No. 1-2 at 7.) At that time, Ms. Gamble decided that she would resign from her position at Sitel because she "could no longer take it[.]" (Id. at 7) She submitted her resignation on April 14, 2014. (Id.)

  B. Procedural Posture

Ms. Gamble filed a charge with the Tennessee Human Rights Commission on August 27, 2014, and with the Equal Employment Opportunity Commission ("EEOC") on March 13, 2014. (Id. at 5.) The EEOC issued a Dismissal and Notice of Rights letter, which was mailed to her on September 17, 2015. (ECF No. 1-1.) On December 8, 2015, Ms. Gamble filed a *pro se* Complaint in this Court. (ECF No. 1.) In that Complaint, Ms. Gamble asserted claims under Title VII and the ADA against both Sitel and Ms. Farmer. On December 17, 2015, the Magistrate entered a Report and Recommendation for Partial *Sua Sponte* Dismissal, recommending that the Court dismiss both claims against Ms. Farmer for failure to state a claim, dismiss the Title VII claim against Sitel for failure to state a claim, but permit Ms. Gamble to amend her Complaint to include the specific relief she sought and to plead additional facts to support her ADA claims against Sitel. (ECF No. 9.) Pursuant to Federal Rule of Civil Procedure 72(b)(2), Ms. Gamble filed a timely objection to the Report and Recommendation. (ECF No. 10.)

Although Ms. Gamble's filing is difficult to decipher, the Court believes she has lodged three separate objections to the Magistrate's Report and Recommendation: first, Ms. Gamble

5

objects to the Magistrate's finding that she has failed to plead sufficient facts to make out a *prima facie* case of disability discrimination against Sitel (ECF No. 10 at 5-6); second, Ms. Gamble objects to the Magistrate's finding that she has failed to plead sufficient facts for her failure-to-accommodate claim against Sitel (ECF No. 10 at 10); and third, Ms. Gamble objects to the Magistrate's finding that she did not specify the type of relief she sought in her Complaint (ECF No. 10 at 9). It does not appear that Ms. Gamble has objected to any other findings of fact or law by the Magistrate.

II.  ANALYSIS

   A. Standard of Review

A magistrate judge may submit to a judge of the court proposed findings of fact and recommendations for dismissal of a complaint for failure to state a claim upon which relief can be granted. 28 U.S.C. § 636(b)(1)(B). "A judge of the court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C); Thomas v. Arn, 474 U.S. 140, 149 (1985). After reviewing the evidence, the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. 28 U.S.C. § 636(b)(1)(C). When neither party objects to the magistrate judge's factual or legal conclusions, the district court need not review those findings under a *de novo* or any other standard. Thomas, 474 U.S. at 150. Accordingly, the Court will review Ms. Gamble's three objections under a *de novo* standard, but otherwise **ADOPTS** the remaining portions of the Report and Recommendation, and, thus, **DISMISSES WITH PREJUDICE** Ms. Gamble's claims against Ms. Farmer for failure to state a claim, and **DISMISSES WITH PREJUDICE** Ms. Gamble's Title VII claim against Sitel for failure to state a claim.

6

When reviewing Ms. Gamble's three objections, the Court applies the Federal Rule of Civil Procedure 12(b)(6) standard. Under that standard, a court must determine whether the plaintiff has stated a claim upon which relief may be granted, but also "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." DirecTV, Inc. v. Treesh, 487 F.3d 471, 476 (6th Cir. 2007). "Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we are not bound to accept as true a legal conclusion couched as a factual allegation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted). For the following reasons, the Court finds that Ms. Gamble has failed to state a claim against Sitel for disability discrimination, and, therefore, that claim is **DISMISSED WITH PREJUDICE**. Ms. Gamble has, however, provided sufficient factual support to state claim against Sitel for failing to reasonably accommodate her first request for an accommodation.

B. First Objection

Ms. Gamble objects to the Magistrate's conclusion that she has failed to plead sufficient facts to establish a *prima facie* case of disability discrimination against Sitel. The ADA prohibits discrimination "against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, or other terms, conditions and privileges of employment." 42 U.S.C. § 12112(a). A plaintiff can establish a claim of discrimination based on a disability through direct evidence or through circumstantial evidence under the *McDonnell Douglas* framework. Gantt v. Wilson Sporting Goods Co., 143 F.3d 1042, 1047 (6th Cir. 1998). "Direct evidence is evidence that proves the existence of a fact without requiring any inferences." Rowan v. Lockhead Martin Energy Sys., Inc., 360 F.3d 544, 548 (6th Cir. 2004) (citations omitted).

7

"[W]hen an employer admits (or the evidence establishes) that its decision was based upon the employee's disability, direct evidence of discrimination exists." Monette v. Elec. Data Sys. Corp., 90 F.3d 1173, 1180 (6th Cir. 1996), abrogated on other grounds by Lewis v. Humboldt Acquisition Corp., 681 F.3d 312 (6th Cir. 2012).

Ms. Gamble has not pled direct evidence of discrimination based on disability; therefore, the Court considers whether she has pled sufficient facts to demonstrate a *prima facie* case through circumstantial evidence under the *McDonnell Douglas* framework. If a plaintiff seeks to establish a disability discrimination claim through circumstantial evidence, she must plead: (1) that she is disabled; (2) that she is otherwise qualified for the position, with or without reasonable accommodation; (3) that she suffered an adverse employment action; (4) that the employer knew or had reason to know of her disability; and (5) that either she was replaced by a nondisabled person or her position remained open while the employer sought other applicants. Daugherty v. Sajar Plastics, Inc., 544 F.3d 696, 703 (6th Cir. 2008).

As to the first element, that is, whether Ms. Gamble is disabled, the ADA defines a disability as "a physical or mental impairment that substantially limits one or more major life activities." 42 U.S.C. § 12102(1). There are two major components to this definition: 1) substantially limits, and 2) major life activity. Under the ADA, the term "substantially limits" means:

> Unable to perform a major life activity that the average person in the general population can perform; or [s]ignificantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity.

29 C.F.R. § 1630.2(j)(1). The ADA enumerates an illustrative list of major life activities, which includes "performing manual tasks, seeing, hearing, eating, . . .learning, . . . concentrating, . . .

8

and working." 42 U.S.C. § 12102(2). The United States Supreme Court has elaborated on the definition of a major life activity as an activity that is of "central importance to daily life." Toyota Motor Mfg., Kentucky, Inc. v. Williams, 534 U.S. 184, 185, (2002), overturned on other grounds due to legislative action (2009). In addition to prohibiting discrimination based on a disability, the ADA also prohibits discrimination against a person who has a record of a disability or is regarded as having a disability. 42 U.S.C. § 12102 (1)(A)-(C). Accordingly, to satisfy the first element of her disability discrimination claim, Ms. Gamble must plead that she suffers from, has a record of, or is regarded as having a physical or mental impairment that completely or significantly restricts her ability to perform an activity that is of central importance to daily life. See Sebest v. Campbell City Sch. Dist. Bd. of Educ., 94 F. App'x 320, 326 (6th Cir. 2004) (detailing the definition of "disability" under the ADA).

Ms. Gamble has satisfied the first element by demonstrating that she suffers from anxiety, panic disorder and stress which prevent her from working or concentrating. (ECF No. 1-2 at 1.) Although Ms. Gamble never specifically pleads what her disability is in her Complaint or Objection, she attached a number of documents to her Objection that support an inference that she is disabled: two "Request[s] for Medical Documentation" from Dr. Pickering, which state that she has an "impairment" of "attention and concentration/distractibility," (ECF No. 10-1 at 10-15); a worker's compensation rejection letter stating that Ms. Gamble suffers from "hypertension, depression, and anxiety," (ECF No. 10-2 at 11); another medical certificate from Dr. Pickering stating that Ms. Gamble has "unspecified depressive d/o and generalized anxiety d/o," (ECF No. 10-3 at 7-8); an ADA Accommodation Request form, wherein Ms. Gamble states that she suffers from a panic disorder (ECF No. 10-1 at 9); and a letter from Dr. Tori Russell stating that Ms. Gamble was seen for "high blood pressure and . . . anxiety and depression."

9

(ECF No. 10-1 at 8.) The Court concludes from her attached documents, which Ms. Gamble refers to and relies upon in her Complaint and Objection, that Ms. Gamble is capable of pleading sufficient facts to establish that she suffers from a disability under the ADA, thus satisfying the first element of her disability discrimination claim.

As to the second element, the Court finds that Ms. Gamble has established facts that, taken in the light most favorable to her, demonstrate that she was otherwise qualified for her position. The "otherwise qualified" element requires that a disabled individual be able to "perform the essential functions of the employment position that such individual holds." 42 U.S.C. § 12111(8). In support of her ability to perform the essential functions of the position she held, Ms. Gamble attached both her Equivalency Diploma and two diplomas from the Tennessee Technology Center at Jackson, Tennessee. (ECF No. 10-3 at 4-6.) The two diplomas from the Tennessee Technology Center indicate that Ms. Gamble is certified as a "Microcomputer Specialist" and "Data Entry Clerk" -- certifications that would support her qualification for the position that she held with Sitel. (Id. at 5-6.)

On the other hand, Ms. Gamble also states that she was written up on multiple occasions for her inability to comply with certain elements of her job, and copies of the write-ups are attached to the Objection. (ECF No. 10-2 at 5-10.) In an email between Ms. Gamble and Ms. Freed, Ms. Freed explains that in a meeting with Ms. Gamble on March 6, 2014, "it was communicated to [Ms. Gamble] that an essential function of the job was to meet all performance metrics, which includes ACW (after call work). Under the ADA, employees must be able to perform the essential functions of the job with or without accommodation." (ECF No. 10-4 at 4.) Ms. Gamble, however, argues that her write-ups were "punitive" examples of harassment, as opposed to genuine evaluations of her qualifications. (ECF No. 1-2 at 1-2.) Because the Court

must draw all reasonable inferences in favor of Ms. Gamble when analyzing a complaint pursuant to Rule 12(b)(6), the Court finds sufficient facts to support the "otherwise qualified" element of her disability discrimination claim.

As to the third element of her claim, the Court finds that Ms. Gamble has pled sufficient facts to demonstrate that she suffered an adverse employment action. "An adverse employment action is a 'materially adverse change in the terms or conditions of ... employment because of [the] employer's conduct.'" Mitchell v. Vanderbilt Univ., 389 F.3d 177, 182 (6th Cir. 2004) (quoting Kocsis v. Multi–Care Mgmt., Inc., 97 F.3d 876, 885 (6th Cir.1996)) (alterations in original). Here, Ms. Gamble alleges that she took disability leave at the direction of her doctor, which was approved by Ms. Escobar. When Ms. Gamble attempted to return to work, she was denied that opportunity until she provided the proper paperwork; however, Ms. Gamble states that she submitted a doctor's note indicating that she could return to work on two different occasions but was still denied the right to do so. The denial constitutes a materially adverse change in the terms or conditions of her employment. See Talley v. Family Dollar Stores of Ohio, Inc., 542 F.3d 1099, 1107 (6th Cir. 2008) (finding that removing an employee from the schedule was an adverse employment action).

Ms. Gamble also states that she suffered an adverse employment action because she was constructively discharged. She has failed, however, to include facts to support that conclusion. "In order to maintain an action for constructive discharge, [a plaintiff] must show that 'working conditions would have been so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign.'" Kocsis v. Multi-Care Mgmt., Inc., 97 F.3d 876, 887 (6th Cir. 1996) (quoting Held v. Gulf Oil Co., 684 F.2d 427, 432 (6th Cir.1982)). Ms. Gamble alleges that she resigned because she was frustrated by Ms. Freed's comment that

she needed a doctor's note indicating the date that Ms. Gamble could return to work. This statement would not *compel* a reasonable person to resign, even when one draws an inference in favor of Ms. Gamble. See Lindsey v. Whirlpool Corp., 295 F. App'x 758, 770 (6th Cir. 2008) (finding that where plaintiff was not denied benefits, compensation, and did not suffer intolerable working conditions, she was not constructively discharged). Moreover, it appears that Sitel accommodated Ms. Gamble's ADA requests by permitting her to take medical leave, as she requested, and by discussing alternative options with her to mitigate the issues she was encountering in the performance of her duties. Although Ms. Gamble does not demonstrate that she was constructively discharged, she does allege that she suffered at least one adverse employment action (being denied the opportunity to return to work), and she has therefore satisfied the third element of her disability discrimination claim.

As to the fourth element, the Court finds that Ms. Gamble states that she informed Sitel of her disability when she applied for her job, and has thus demonstrated that Sitel was aware of her disability.

As to the fifth element, there are no allegations in Ms. Gamble's Complaint or Objection that demonstrate that Sitel refused to allow her to return to work *because* of her disability. To satisfy the last prong, Ms. Gamble must show that "either she was replaced by a nondisabled person or her position remained open while the employer sought other applicants." Daugherty v. Sajar Plastics, Inc., 544 F.3d 696, 703 (6th Cir. 2008). This prong "may also be satisfied by showing that similarly situated non-protected employees were treated more favorably." Jones v. Potter, 488 F.3d 397 (6th Cir. 2007) (citing Tally v. Bravo Pitino Rest., Ltd., 61 F.3d 1241, 1246 (6th Cir. 1995)). Ms. Gamble does not include any facts showing that she was replaced with a nondisabled person; that her position remained open while the employer sought other applicants;

or that similarly situated non-protected employees were treated more favorably. She simply states that she took a leave of absence from work, followed by a medical leave, and that Ms. Freed was unsure when Ms. Gamble would be able to return to work absent a doctor's note. As a result, even though Ms. Gamble has alleged facts sufficient to establish the first four elements of her disability discrimination claim, she has failed to demonstrate the fifth element and has therefore failed to state a claim upon which relief may be granted. This claim is therefore **DISMISSED WITH PREJUDICE**.

### C. Second Objection

In the Report and Recommendation, the Magistrate found that Ms. Gamble failed to plead sufficient facts to support her failure-to-accommodate claim. Specifically, the Magistrate noted that, while Ms. Gamble stated that she had submitted two accommodation requests that were denied, she failed to attach any documents referred to in her Complaint and failed to state "what her disability is, what accommodations she requested, and whether there is a causal relationship between the disability and the requests for accommodations." (ECF No. 9 at 16.) Therefore, the Magistrate recommended that "she be allowed thirty days to amend her ADA disability claim to add more facts and include the necessary attachments." In her Objection, Ms. Gamble attached the documents she refers to in her Complaint, which support her claim that Sitel failed to accommodate her first request.

It is "unlawful for a covered entity not to make reasonable accommodation to the known physical or mental limitations of an otherwise qualified applicant or employee with a disability, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of its business." 29 C.F.R. § 1630.9(a). To succeed on a failure to accommodate claim, as an initial matter, the plaintiff bears the burden of demonstrating that she "requested and was denied" a reasonable accommodation. Lockard v. Gen. Motors Corp., 52

Fed.Appx. 782, 786 (6th Cir.2002). To properly request a reasonable accommodation, "an employee need not use the magic words 'accommodation' or even 'disability,' [however,] the request does need to make it clear from the context that it is being made in order to conform with existing medical restrictions." Leeds v. Potter, 249 F. App'x 442, 449 (6th Cir. 2007) (citing Smith v. Henderson, 376 F.3d 529, 535 (6th Cir.2004)). Ms. Gamble submitted two ADA accommodation requests to Sitel (one on December 2, 2013, and one on March 12, 2014), and although Ms. Gamble appears to attribute her requests to factors other than her disability (such as technical issues she was experiencing with her software), the requests do mention her anxiety, stress, and panic disorders, and each is titled "ADA Accommodation Request Form." (ECF No. 10-1 at 9, 13.) Therefore, drawing all inferences in favor of Ms. Gamble, the Court finds that she properly requested accommodations on both of those instances.

When a plaintiff properly requests an accommodation, her employer is *required* to engage in an "informal, interactive process with the [plaintiff] . . . [to] identify the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations." Lafata v. Church of Christ Home for Aged, 325 F. App'x 416, 422 (6th Cir. 2009) (quoting 29 C.F.R. § 1630.2(o)(3)). Both parties must engage in the process in good-faith. Kleiber v. Honda of Am. Mfg., Inc., 485 F.3d 862, 871 (6th Cir.2007). Based on that standard, the Court finds that Sitel approved Ms. Gamble's second request for accommodation by granting her medical leave on the day that she submitted the request, but denied her first accommodation request. Ms. Gamble states that Sitel initially denied her first request, and only consulted with her about it after she filed a complaint with the Human Resources department three months later. Drawing all inferences in favor of Ms. Gamble, the Court finds that she has alleged sufficient facts to establish that Sitel did not engage in a good-

faith interactive process as to her first request. The Court continues its analysis only as to that claim.

Because a failure-to-accommodate claim "necessarily" involves direct evidence of discrimination, the Court

> [j]ettison[s] the familiar *McDonnel Douglas* burden-shifting framework . . . and analyze[s] the claim under the following framework: (1) The plaintiff bears the burden of establishing that he or she is disabled. (2) The plaintiff bears the burden of establishing that he or she is "otherwise qualified" for the position despite his or her disability: (a) without accommodation from the employer; (b) with an alleged "essential" job requirement eliminated; or (c) with a proposed reasonable accommodation. (3) The employer will bear the burden of proving that a challenged job criterion is essential, and therefore a business necessity, or that a proposed accommodation will impose an undue hardship upon the employer.

Kleiber v. Honda of Am. Mfg., Inc., 485 F.3d 862, 869 (6th Cir. 2007) (citing Hedrick v. W. Reserve Care Sys., 355 F.3d 444, 452 (6th Cir. 2004)). As discussed *supra*, for purposes of a *sua sponte* dismissal, Ms. Gamble has sufficiently demonstrated that she is disabled and is otherwise qualified for her position. Accordingly, Ms. Gamble has provided sufficient factual allegations and documentation for this narrow claim to survive *sua sponte* dismissal.

D. Third Objection

Ms. Gamble also objects to the Magistrate's finding that she did "not specify the type of relief" desired. (ECF No. 9 at 5.) In her Complaint, Ms. Gamble checked boxes for back pay with interest, compensatory damages, and other equitable or injunctive relief; however, she did not specify any amounts as to damages or specify what equitable relief she sought. (ECF No. 1.) In her Objection, Ms. Gamble specifies the relief she seeks. She states that she "seeks monetary compensation and punitive remedies in the amount of $300,000, based on prima facie [sic] in

15

proving the facts of this case." (ECF No. 10 at 9.) Accordingly, the Court finds that Ms. Gamble has sufficiently stated the monetary relief she seeks in this case.[3]

III. CONCLUSION

For the foregoing reasons, the Court **ADOPTS** the Report and Recommendation. Ms. Gamble has provided sufficient factual allegations only as to her failure to accommodate claim relating to her first accommodation request submitted to Sitel on December 2, 2013. Accordingly, Ms. Gamble's Title VII and ADA claims against Ms. Farmer are hereby **DISMISSED WITH PREJUDICE**, and Ms. Gamble's Title VII claim and disability discrimination claim against Sitel are hereby **DISMISSED WITH PREJUDICE**.

Because Ms. Gamble's Objection is not styled as an amended complaint, the Court **ORDERS** Ms. Gamble to file an amended complaint by Friday, May 20, 2016. Ms Gamble is advised that she is to file her amended complaint on the Court-supplied complaint form (the same form she filed her original Complaint on), and is to only plead the factual allegations supporting her remaining claim: that is, Sitel's alleged failure to accommodate her disability based on the first accommodation request she submitted on December 2, 2013. Ms. Gamble may not rely solely upon the documents she has attached to her Objection, but is required, pursuant to Fed. R. Civ. P. 12(b)(6), to actually state all of the factual allegations that support her claim in her Amended Complaint. On this form, she must also detail the remedies she seeks for that claim.

---

[3] In a later section in her Objection, Ms. Gamble states that she seeks $100,000 in damages relating to her gender discrimination claims. (ECF No. 10 at 14.) She also states that she is seeking damages relating to an Equal Pay Act claim. (Id. at 18.) However, all of these claims have been dismissed for failure to state a claim, making those declared damages moot.

**IT IS SO ORDERED**, this 19th day of April, 2016.

s/ Sheryl H. Lipman  
SHERYL H. LIPMAN  
UNITED STATES DISTRICT JUDGE