IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

_____

STEPHANIE GAMBLE,

    Plaintiff,

                            No. 15-2789-SHL-dkv

vs.

SITEL OPERATING CORPORATION and
MEREDITH ASHLEY FARMER,

    Defendants.

_____

REPORT AND RECOMMENDATION FOR PARTIAL *SUA SPONTE* DISMISSAL OF
PLAINTIFF'S AMENDED COMPLAINT
AND TO ISSUE AND EFFECT SERVICE OF PROCESS
_____

On December 8, 2015, the plaintiff, Stephanie Gamble
("Gamble"), filed a *pro se* complaint against the defendants, Sitel
Operating Corporation ("Sitel") and Meredith Ashley Farmer
("Farmer"), alleging gender discrimination in violation of Title VII
of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title
VII"), and disability discrimination in violation of the Americans
with Disabilities Act of 1990, 42 U.S.C. §§ 12112, ("ADA"). (Compl.,
ECF No. 1.) Accompanying the complaint was a motion seeking leave
to proceed *in forma pauperis*, (ECF No. 2), which the court granted
on December 9, 2015, (ECF No. 6). Gamble also filed a motion for
appointment of counsel, (ECF No. 3), which the court denied on
December 9, 2015, (ECF No. 8). This case has been referred to the
United States Magistrate Judge for management and for all pretrial

matters for determination and/or report and recommendation as appropriate. (Admin. Order 2013-05, Apr. 29, 2013.)

On December 17, 2015, a Report and Recommendation for Partial *Sua Sponte* Dismissal was filed recommending that Gamble's gender and disability discrimination claims against Farmer be dismissed for failure to state a claim, that Gamble's gender discrimination claim against Sitel be dismissed, and that Gamble be allowed to amend her disability claim against Sitel. (ECF No. 9.) Gamble timely filed objections to the report and recommendation on December 30, 2015. (ECF No. 10.)

On April 19, 2016, the presiding district judge entered an Order Adopting Magistrate's Report and Recommendation in its entirety, dismissing all of Gamble's claims against Farmer and dismissing her gender discrimination claim and disability discrimination claim against Sitel with prejudice. (ECF No. 11.)[1] Gamble was ordered to file an amended complaint on the court-supplied complaint form and to only plead factual allegations supporting her failure to provide reasonable accommodation claim against Sitel based on the accommodation request she submitted to Sitel on December 2, 2013, her sole remaining claim. Gamble filed her amended complaint on May 19, 2016. (ECF No. 14.)

I.   PROPOSED FINDINGS OF FACT

---

[1]On April 19, 2016, the court entered judgment as to Farmer dismissing with prejudice all claims against Farmer. (ECF No. 12.)

Despite the explicit order of the court to only plead factual allegations supporting her failure to accommodate claim against Sitel, Gamble still named Farmer as a defendant in her amended complaint. In addition, Gamble also included additional causes of action against both Sitel and Farmer, specifically breach of contract, negligence and negligence per se, plus she included factual allegations supporting all her claims in her original complaint even though they had been dismissed by the court.

Gamble did file her amended complaint on a court-supplied form styled "Complaint" as instructed, and she checked the box beside "Americans with Disabilities Act of 1990." (Am. Compl. 1, ECF No. 14.) In the space provided for alleging the discriminatory conduct, Gamble checked the boxes for: termination of my employment; failure to promote; failure to accommodate my disability; unequal terms and conditions of my employment; retaliation; and other – "Fail to accommodate my disability twice." (*Id.* ¶ 6.) Gamble alleges that the discriminatory acts were based on her disability "twice" and occurred on 10/26/2013, 11/1/2013, 12/2/2013, 1/10/2014, 1/30/2014, 3/6/2014, 3/14/2014, 3/18/2014, 3/31/2014, 4/1/2014, 4/2/2014, 4/4/2014, 4/7/2014, and 4/14/2014. (*Id.* ¶¶ 7, 9.)

In the amended complaint, Gamble states that she filed a charge with the Tennessee Human Rights Commission on June 23, 2014. (*Id.* ¶ 11.) Gamble also states that she filed a charge with the Equal Employment Opportunity Commission ("EEOC") on March 15, 2014, (*Id.*

¶ 12), and that the EEOC issued a Notice of Right to Sue, which was received by her on September 27, 2015, (*Id.* ¶ 14).

Gamble attached the following documents to her amended complaint:

1. A 7-page synopsis of emails, phone calls, leave requests and leave approvals, (ECF No. 14-1);

2. A "Dismissal and Notice of Right" letter mailed by the EEOC on September 17, 2015, (ECF No. 14-2);

3. A 19-page document stating the facts of her case, (ECF No. 14-3);

4. Six pages of exhibits, (ECF No. 14-4);

5. One-page email exhibit (ECF No. 14-5);

6. Ten pages of email exhibits, (ECF No. 14-6);

7. Ten pages of email exhibits, (ECF No. 14-7);

8. Two pages of email exhibits, (ECF No. 14-8).

In her nineteen-page Statement of Facts document, Gamble states that on December 2, 2013, she submitted an ADA accommodation request because she "had system failures, system downtime that caused hold times to increase, and after call work harassment increased after it was changed to 30 seconds without notice that was previously between 3-5 minutes this is when the write-ups were implemented." (Statement of Facts 2, ECF No. 14-3.) She states the systems issues caused her "to experience symptoms of panic attacks due to my disability of anxiety disorder and major depression when the defendant [sic] adverse actions began to exacerbate my conditions."

(*Id.*)  Gamble states she requested the following ADA accommodations from Sitel to alleviate the harassment and intimidation:

1. "learning period on how to use the correct status in the phone's CTI Metric Monitor system to avoid unfair write-ups due to hold time,"

2. "job restructuring on another job position was accessible through Ashley Farmer, but Ms. Farmer denied the plaintiff from obtaining another suitable position,"

3. Modified system software equipment "to stop the on the job pressure and the feelings of stress due to fear of making mistakes, and being punishment in the form of (ACW) write-ups due to Sitel's own computer system issues and downtime," and

4. Reasonable time to access email because she was not given enough time to access email for daily news, updates, and changes concerning jobs and she was "denied learning tools . . . on how to operate new equipment once replaced or updated."  She also requested a block in her schedule to complete her shift bids.

(*Id.* at 2-3.)

Gamble states the request for accommodation caused Sitel to discriminate and retaliate by giving her a "poor inaccurate performance evaluation score" on March 6, 2014.  (*Id.* at 3.)  She states Sitel denied her first request for accommodation.  (*Id.*)  Thereafter, on March 5, 2014, Gamble made an internal complaint to the Human Resources Department and to Farmer about ADA requests and shift issues.  (*Id.*)  Gamble states that Farmer responded and:

placed harm and hurt upon Ms. Gamble due to the severity of Ms. Farmer['s] harsh, negative, and false statements. Ms. Farmer['s] statements concerning my job, which was my main source of income, jeopardized my whole means of self-sufficient and survival, it was foreseeability [sic] for me to be a person who could be injured by the defendant.

(*Id.* at 3-4.) Gamble further states that Sitel had a record of her disabilities, and, on March 6, 2014, Farmer refused to accommodate Gamble's request for accommodation. (*Id.* at 4-5.) On March 6, 2014, Farmer also revealed to Gamble that she had a "customer relations operator performance score of 46 percent," which, according to Gamble was not accurate because she "had, in fact, a ninety percent average customer relations operator score according to [her] overall performances and [her] immediate coach Ms. Roxanne Nunn." (*Id.* at 5.) Gamble alleges that this caused her to "experience a disability-related occupational injury on March 6, 2014." (*Id.* at 4.) Gamble took a sick leave from March 7, 2014 to March 11, 2014. (*Id.* at 5.)

Gamble alleges that she spoke with Director of Human Services Reagan Freed ("Freed") on March 10, 2014 and that they entered into a verbal agreement that she would submit another ADA request for a reduced or modified shift when she returned to work. (*Id.* at 6.) On March 12, 2014, Gamble completed and submitted an application for a leave of absence from March 7, 2014 through April 7, 2014. (*Id.* at 7; Gamble's Exs. 4, ECF No. 14-6.) On March 18, 2014, HR Generalist Selina Escobar approved a medical leave for Gamble from March 3, 2014 through April 1, 2014 returning back to work on April

2, 2014.  (Statement of Facts 7, ECF No. 14-3; Gamble's Exs. 1, ECF No. 14-4.)[2]

Gamble alleges that on March 14, 2014, Gamble submitted a second ADA accommodation request for "a reduced, modified, or a flexible part-time shift due to job related issues that continued limit [sic] one or more of [her] abilities to perform work full-time." (Statement of Facts 7, ECF No. 14-3.)  In the actual ADA Accommodation Request Form, Gamble requested "time off due to medical issues.  Mental and Physical health is in jeopardy."  (Gamble's Exs. 3, ECF 14-4.)  Gamble asked for a shift change with flexible hours. (*Id.*)  In response to the question concerning job function, Gamble stated she was having difficulty: "Thinking, concentrating, performing certain job tasks, and interacting with others.  Also, due to the time and hours of my scheduled shift, the meds I take is [sic] in conflict with my shift."  (*Id.*)  Gamble stated she was having difficulty accessing FMLA because she had not been employed long enough to access full benefits to use FMLA.  (*Id.*)  Gamble further stated that "[e]motional trauma and [her] state of mind" have caused me to experience physical illness, and that this limitation posed "[s]ignificant interference with [her] capacity to engage in competitive work duties."  (*Id.*)

_____

[2]On March 18, 2014, Dr. Russell of Lift Health Clinic stated that Gamble would be able to return to work on April 1, 2014.  (Gamble's Exs. 2, ECF No. 14-4.)

In her amended complaint, Gamble further alleged that on March 25, 2014, she received an email from Freed offering her a shift to work 12:00-21:00 hours with Wednesdays and Thursdays off, and informed her that all other shifts were full. (Statement of Facts 10, ECF No. 14-3.) On March 25, 2014, Gamble responded with shift options of 8:30am to 2:00pm or 3:00pm, 9:30am to 3:00pm or 4:00pm, and 10:30am to 3:00pm or 4:00pm. (Gamble's Exs. 10, ECF No. 14-6.) On March 26, 2014, Gamble further responded:

> The hours on the shift 12:00-17:00 central with days Wednesdays and Thursdays off is suitable for me. Due to my disability-related occupational injury that occurred on March 6, 2014, I am still in recovery. At this time I will only be able to accept up to 5 hours a day [as] my health and well-being is a big concern for me and my doctors as well.

(*Id.* at 9.).

Gamble and Freed exchanged several emails between March 26 and 31, 2014. (ECF No. 14-7.) During these emails, Freed acknowledged Gamble's worker's compensation claim, told her that he would like to speak to her about her claim of discrimination, and requested to meet with Gamble to conclude the investigation and discuss her reduced schedule upon her return to work. (*Id.* at 1-5.) On March 28, 2014, Gamble requested that they correspond via email because she did not want to speak via phone call. (*Id.* at 5-7.) On March 31, 2014, Freed stated:

> I am happy to follow-up every conversation we have with a confirming email, but we cannot only communicate via email. Here is why:

> The law requires that ADA accommodations are an
> interactive dialogue between both parties. We still need
> to discuss your arrangements for returning to work.
> Second, we need to conclude the findings of your claim of
> discrimination.
> Again, after we speak I will gladly follow-up with you in
> writing.

(*Id.* at 8.) Gamble alleges that on March 31, 2014, she finally discussed everything with Freed over the phone.

Gamble states that on April 4 and 7, 2014, she submitted medical ADA accommodation documents from Dr. Pickering. (Statement of Facts 14, ECF No. 14-3.) Gamble has attached the April 4, 2014 Request for Medical Information completed by Dr. Pickering. (Gamble's Exs. 4-6, ECF No. 14-4.) In this document, Dr. Pickering stated that Gamble is able to perform all of the physical and mental functions of her position with modifications. (*Id.* at 4.) Dr. Pickering suggested that Gamble be placed on a modified part time schedule which allows her to work four to five hours per day instead of her scheduled nine hours per day. (*Id.*) Dr. Pickering stated that Gamble has impaired attention, concentration, and distractibility and will require additional time to refocus to complete tasks between calls. (*Id.* at 5.) Dr. Pickering further stated:

> Learning is affected by her ability to concentrate and
> attend. Her ability to complete other ADL's/major life
> activities are also impaired by her perfectionism,
> depression + anxiety. However, as these are responding
> to treatment, Ms. Gamble should be able to return to work
> with accommodations. Improvements should continue with
> current treatment.

(*Id.* at 6.)   According to Gamble, she provided "all necessary
paperwork and medical document for the purpose of an ADA
accommodation as a qualified worker to return back to work," but that
Sitel refused to allow her to return back to work.   (Statement of
Facts 15-16, ECF No. 14-3.)   Gamble alleges that she eventually
resigned "under constructional discharge" on April 14, 2014.   (*Id.*
at 15.)

Based on these facts, Gamble sets forth three claims in her
amended complaint.   As to claim one, Gamble states:

> The defendants had legal obligations that went unfulfilled
> in the terms of employee breach of contract:
>
>> 1. Failure to Accommodate
>>
>> 2. Fails to Act in a reasonable manner
>>
>> 3. Negligence (Breached a duty by not accommodating
>> plaintiff twice December 2, 2013 and March 14, 2014)
>>
>> 4. Negligence Per Se
>>
>> 5. Loss of all employee benefits
>
> The defendants' [sic] sought out through intentional and
> deliberately to hurt the plaintiff.   I was injured by
> defendants', [sic] Sitel's and Meredith Ashleigh Farmer.
> The defendants' [sic] cause injuries by negligence and the
> plaintiff, Stephanie Gamble, provided proof of evidence
> by a preponderance of evidence to her allegation from the
> "original claim on pleadings" entitlement to win in her
> request for relief.

(*Id.* at 16-17.)   As to claim two, Gamble states that Sitel and Farmer
violated her "civil legal rights" for non-promotion, punitive
write-ups, wrong performance score, wrongful displacement of shift

bids, "harassment due to a system failure that placed culpability upon the plaintiff that caused intimidation and a write-ups," failing to accommodate her second ADA accommodation request, and failing to allow her to return to work on a reduced or modified shift. (*Id.* at 17-18.) As to claim three, Gamble states that the defendants breached a contract by failing to accommodate her. (*Id.* at 18-19.)

For relief, Gamble requests back pay in the amount of $70,000 with interest and compensatory damages in the amount of "$300,000 2x for each or both failures to accommodate requests due to disability or disabilities." (Am. Compl. ¶ 16, ECF No. 14.)

## II.  PROPOSED CONCLUSIONS OF LAW

### A.  28 U.S.C. § 1915(e)(2) Screening

Pursuant to Local Rule 4.1(a), service will not issue in a *pro se* case where the *pro se* plaintiff has been granted leave to proceed *in forma pauperis* until the complaint has been screened under 28 U.S.C. § 1915(e)(2). The clerk is authorized to issue summonses to *pro se* litigants only after that review is complete and an order of the court issues.

This report and recommendation will constitute the court's screening of Gamble's amended complaint in its entirety. Because service has not issued, Gamble may amend her complaint as a matter of course. The court is required to screen *in forma pauperis* complaints and to dismiss any complaint, or any portion thereof, if the action —

<pre>
    (i)      is frivolous or malicious;

    (ii)     fails to state a claim on which relief may be
             granted; or

    (iii)    seeks monetary relief against a defendant who
             is immune from such relief.
</pre>

28 U.S.C. § 1915(e)(2).

B.   <u>Standard of Review for Failure to State a Claim</u>

In assessing whether Gamble's amended complaint states a claim on which relief may be granted, the court applies the standards under Federal Rule of Civil Procedure 12(b)(6), as stated in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). "A complaint must "'contain[] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Courie v. Alcoa Wheel & Forged Prods.*, 577 F.3d 625, 629 (6th Cir. 2009)(quoting *Iqbal*, 556 U.S. at 678). The court "construes the complaint in a light most favorable to [the] plaintiff" and "accepts all factual allegations as true" to determine whether they plausibly suggest an entitlement to relief. *HDC, LLC v. City of Ann Arbor*, 675 F.3d 608, 611 (6th Cir. 2012). However, "pleadings that . . . are no more than conclusions[] are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679; *see also Twombly*, 550 U.S. at 555 n.3 ("Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief. Without some factual

allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests."). The Supreme Court's decision in *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508 (2002), makes clear that Title VII plaintiffs are not required to plead the elements of a prima facie case under *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). All that is required is that the complaint comply with "Rule 8(a)'s simplified pleading standard." *Swierkiewicz,* 534 U.S. at 513.

"*Pro se* complaints are to be held to less stringent standards than formal pleadings drafted by lawyers, and should therefore be liberally construed." *Williams*, 631 F.3d at 383 (internal quotation marks omitted). *Pro se* litigants, however, are not exempt from the requirements of the Federal Rules of Civil Procedure. *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989); *see also Brown v. Matauszak*, 415 F. App'x 608, 613 (6th Cir. 2011) ("[A] court cannot create a claim which [a plaintiff] has not spelled out in his pleading.") (internal quotation marks omitted); *Payne v. Sec'y of Treas.*, 73 F. App'x 836, 837 (6th Cir. 2003) (affirming *sua sponte* dismissal of complaint pursuant to Fed. R. Civ. P. 8(a)(2) and stating, "[n]either this court nor the district court is required to create Payne's claim for her"); *cf. Pliler v. Ford*, 542 U.S. 225, 231 (2004) ("District judges have no obligation to act as counsel or paralegal to *pro se* litigants."); *Young Bok Song v. Gipson*, 423 F. App'x 506, 510 (6th Cir. 2011) ("[W]e

decline to affirmatively require courts to ferret out the strongest cause of action on behalf of *pro se* litigants. Not only would that duty be overly burdensome, it would transform the courts from neutral arbiters of disputes into advocates for a particular party. While courts are properly charged with protecting the rights of all who come before it, that responsibility does not encompass advising litigants as to what legal theories they should pursue.").

C.   Gamble's ADA Failure to Accommodate Claim Against Sitel

Gamble alleges that she made two requests for accommodations. Regulations issued by the EEOC, which is the agency charged by Congress to interpret and enforce the ADA, provide that it is "unlawful for a covered entity not to make reasonable accommodation to the known physical or mental limitations of an otherwise qualified applicant or employee with a disability, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of its business." 29 C.F.R. § 1630.9(a). Thus, to establish a *prima facie* case for failure to provide a reasonable accommodation, Gamble must demonstrate that (1) she is disabled; (2) she is otherwise qualified for the position, with or without reasonable accommodation; (3) her employer was aware of her disability; (4) there was a causal relationship between the disability and the request for accommodation; and (5) the employer failed to provide a reasonable accommodation. *DiCarlo v. Potter*, 358 F.3d 408, 419 (6th Cir. 2004), *overruled on other grounds by Gross*

*v. FBL Fin. Servs., Inc.*, 557 U.S. 167 (2009)(citing *Gaines v. Runyon*, 107 F.3d 1171, 1175-76 (6th Cir. 1997)); *see also Myers v. Cuyahoga Cnty., Ohio*, 182 F. App'x 510, 515 (6th Cir. 2006); *Pearson v. Cuyahoga Cnty.*, 596 F. App'x 358, 366 (6th Cir. 2014). To be "otherwise qualified" for the job, the employee bears the burden of showing she can perform the "essential functions" of the job, with or without accommodation. 42 U.S.C. § 12111(8).

In her amended complaint, Gamble sufficiently pleads a failure-to-accommodate claim. Gamble states that she suffered from "disabilities of major depression and generalized anxiety disorder," (Statement of Facts 1, ECF No. 14-3), and that Sitel was aware of her disabilities, (*Id.* at 4). She further states that she requested two accommodations, one on December 2, 2013 and the second on March 14, 2014. (*Id.* at 2.) She provides in detail what accommodations she requested. (*Id.* at 2-3, 7; Gamble's Exs. 3, ECF No. 14-4.) As to her second accommodation, Gamble has provided a Request for Medical Information completed by Dr. Pickering in which Dr. Pickering states that Gamble is able to perform all of the physical and mental functions of her position with modification. (Gamble's Exs. 4-6, ECF No. 14-4.) Therefore, Gamble has pled sufficient facts to put Sitel on notice of her ADA failure-to-accommodate claim based on her two requests for accommodation.

D.    Gamble's ADA Retaliation Claim Against Sitel

In the space provided for alleging the discriminatory conduct

in the amended complaint, Gamble checked, among others, the box for retaliation. (Am. Compl. ¶ 6, ECF No. 14.) In her Statement of Facts, Gamble alleges that she was retaliated against after she filed her first ADA accommodation request on December 2, 2013 and an internal complaint to the HR department and Farmer "about ADA requests and shift issues" on March 5, 2014. (Statement of Facts 3-5, ECF No. 14-3.) According to Gamble, Sitel "discriminate[d] and retaliate[d] [against her] with a poor inaccurate performance evaluation score that Ms. Farmer sent to [her] on March 6, 2014" via a letter. (*Id.* at 3, 5.) Gamble states that she received "a customer relations operator performance score of 46 percent when in fact [she had] a ninety percent average customer relations operator score according to [her] overall performance[] and [] immediate coach Ms. Roxanne Nunn." (*Id.* at 5.) Additionally, Gamble also alleges that in the March 6, 2014 letter, Farmer retaliated against her by making "harsh, negative, and false statements." (*Id.* at 3, 5.)[3]

To establish a *prima facie* case of retaliation under the ADA, plaintiff must show that: (1) she engaged in activity protected under

---

[3]While Gamble also indicated she was complaining of retaliation in her original complaint, (*see* Compl. ¶ 6, ECF No. 1), her allegations did not specifically state that she suffered an adverse employment action as a result of engaging in protected conduct, (*see* Statement, ECF No. 1-2). Therefore, the court did not consider such claim in its first Report and Recommendation. (ECF No. 9.) In the amended complaint, however, Gamble specifically states that she was retaliated against after she filed an ADA accommodation request and an HR complaint. (Statement of Facts 3, ECF No. 14-3.) Therefore, the court will analyze whether Gamble's allegations in her amended complaint sufficiently state an ADA retaliation claim.

the ADA; (2) the defendant knew that she engaged in the protected activity, (3) the defendant subsequently took an adverse, retaliatory action against the plaintiff, or the plaintiff was subjected to severe or pervasive retaliatory harassment by a supervisor, and (4) the protected activity and the adverse action were causally connected. *Baker v. Windsor Republic Doors*, 414 F. App'x 764, 776 (6th Cir. 2011). If the plaintiff succeeds in establishing a *prima facie* case, the burden then shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse action. *Id.* at 778 (quoting *Sowards v. Loudon Cnty., Tenn.,* 203 F.3d 426, 431 (6th Cir. 2000)). If the defendant carries this burden, then the plaintiff "must prove that the proffered reason was actually a pretext to hide unlawful discrimination." *Id*.

As to the first element, the ADA provides that "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." 42 U.S.C. § 12203 (a). It is unclear from Gamble's minimal allegations whether her March 5, 2014 internal complaint to the HR department concerning "ADA requests and shift issues" constitutes a "protected activity" under the ADA. Without more information, the court cannot determine whether Gamble's internal complaint opposed any act or practice made unlawful by the ADA.

Nevertheless, Gamble's request for accommodation is considered "protected activity" under the ADA, and thus, Gamble has sufficiently pled the first element of her ADA retaliation claim. *See Baker v. Windsor Republic Doors*, 414 F. App'x 764, 776 (6th Cir. 2011); *Bryson v. Regis Corp.*, 498 F.3d 561, 577 (6th Cir. 2007). As to the second element, Gamble alleges that she filed the first ADA accommodation request with Sitel. Therefore, Sitel knew that she engaged in the protected activity.

As to the third element, Gamble alleges that she suffered an adverse employment action when she received an inaccurate performance score and when Farmer made "harsh, negative, and false statements" in her March 6, 2014 response. (Statement of Facts 3-5, ECF No. 14-3.) In *White v. Burlington N. & Santa Fe R. Co.*, 364 F.3d 789, 795 (6th Cir. 2004), *aff'd sub nom.*, *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006), the Sixth Circuit stated that, in the context of a Title VII claim, an adverse employment action is defined as a "materially adverse change in the terms and conditions" of employment. *Id.* at 795 (citation and internal quotation marks omitted).[4] Upon appeal, the Supreme Court held that the Sixth Circuit's standard was too restrictive and that the "antiretaliation provision . . . is not limited to discriminatory

---

[4] Title VII's antiretaliation provision and the ADA's antiretaliation provision are largely identical to one another. *Compare* 42 U.S.C. § 2000e-3(a) *with* 42 U.S.C. § 12203(a). Therefore, the same analysis would apply to an adverse employment action in the context of an ADA retaliation claim.

actions that affect the terms and conditions of employment."
*Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 64 (2006).
The Court held that to allege an adverse employment action, "a
plaintiff must show that a reasonable employee would have found the
challenged action materially adverse, 'which in this context means
it well might have dissuaded a reasonable worker from making or
supporting a charge of discrimination.'" *Id.* at 68 (quoting *Rochon
v. Gonzales*, 438 F.3d 1211, 1219 (D.C. Cir. 2006)). The Court
further explained that trivial harms such as "sporadic use of abusive
language, gender-related jokes, [] occasional teasing . . . normally
petty slights, minor annoyances, and simple lack of good manners"
do not constitute adverse employment actions. *Id.* (citation
omitted).

Here, Gamble has not sufficiently alleged that Farmer's "harsh,
negative, and false statements" in her March 6, 2014 letter
constitute an adverse employment action. (Statement of Facts 3-5,
ECF No. 14-3.) Gamble does not state the exact statements made by
Farmer or indicate whether they had any adverse impact on her
employment. As the Supreme Court has stated "abusive language . .
. petty slights, minor annoyances, and simple lack of good manners"
do not constitute an adverse employment action. *Burlington*, 548
U.S. at 64; *see also Moore v. Abbott Labs.*, 780 F. Supp. 2d 600, 623
(S.D. Ohio 2011)(finding that co-workers remark regarding
plaintiff's "questionable" performance did not rise to the level of

actionable conduct). Further, "receiving verbal warnings concerning employee misconduct" does not amount to an adverse employment action. *Szeinbach v. Ohio State Univ.*, 758 F. Supp. 2d 448, 462-63 (S.D. Ohio 2010), *aff'd in part, rev'd in part on other grounds*, 493 F. App'x 690 (6th Cir. 2012)(citations omitted); *Taylor v. H.B. Fuller Co.,* 2008 WL 4647690, at *8-9 (S.D. Ohio Oct. 20, 2008)(stating that verbal warning with no accompanying detrimental effect on career was not an adverse employment action). Therefore, Gamble has not sufficiently pled that Farmer's alleged statements would have "dissuaded a reasonable worker from making or supporting a charge of discrimination."

Gamble has sufficiently alleged that she suffered an adverse employment action when she received a low performance score. The Sixth Circuit has found that low employee performance evaluation scores could constitute an adverse employment action if they actually impact the employee's wages and professional advancement. *White v. Baxter Healthcare Corp.,* 533 F.3d 381, 402-03 (6th Cir. 2008); *Vaughn v. Louisville Water Co.,* 302 F. App'x 337, 348 (6th Cir. 2008); *Halfacre v. Home Depot, USA, Inc.,* 221 F. App'x 424, 433 (6th Cir. 2007). The plaintiff may show that the low performance score actually impacted his wages or advancement at a later stage in the litigation. *See Halfacre*, 221 F. App'x at 433 (holding that the district court should have allowed further discovery on whether the plaintiff's lower evaluations actually impacted his wages or

promotion potential); *Baxter Healthcare Corp.*, 533 F.3d at 402 (finding that the plaintiff sufficiently demonstrated at the summary judgment phase that the downgraded performance evaluation caused him to suffer a significant change in benefits); *Moore*, 780 F. Supp. 2d at 628 (assuming that the plaintiff satisfied the element of adverse employment action for the purpose of summary judgment because the defendant did not argue that the performance rating was not a materially adverse employment action). Therefore, at the screening state, Gamble has pled sufficient facts to allege that the low performance score constitutes an adverse employment action.

As to the fourth element, Gamble alleges that the adverse employment actions happened approximately two months after Gamble's first request for accommodation on December 2, 2013 and one day after Gamble's internal complaint to the HR department. The Sixth Circuit has found that a two-month gap between the protected activity and the adverse employment action is sufficient to create a causal connection for the purpose of establishing a *prima facie* case. *Goller v. Ohio Dep't of Rehab. & Correction*, 285 F. App'x 250, 257 (6th Cir. 2008).

Gamble's burden in establishing a *prima facie* case of an ADA retaliation claim is not intended to be an onerous one, *see Dixon v. Gonzales*, 481 F.3d 324, 333 (6th Cir. 2007), and, for the reasons discussed herein, Gamble has pled sufficient facts to put Sitel on notice of her ADA retaliation claim.

E.  Gamble's Claims Against Farmer

In her amended complaint, Gamble again lists Farmer as a defendant and sets forth claims against her.  As discussed above, Farmer was dismissed as a defendant from the instant suit on April 19, 2016, (ECF No. 11), and Gamble has filed a notice of appeal with regard to that decision, (ECF No. 13).  Therefore, Gamble cannot assert any claims against Farmer in her amended complaint. In addition, for the reasons set forth in the court's initial Report and Recommendation for Sua Sponte Dismissal, Farmer cannot be held liable under Title VII or the ADA because she was Gamble's supervisor not her employer.  (Report and Recommendation 9, ECF No. 9.) Therefore, it is recommended that Gamble's Title VII and ADA claims against Farmer in the amended complaint be dismissed for failure to state a claim.

F.  Other Claims Asserted by Gamble

Further, in her amended complaint, Gamble purports to set forth three different causes of action.  These causes of action are incoherently stated and fail to set forth any viable claims for relief.  In Claims I and III, Gamble purports to set forth a common-law breach of contract claim against Sitel based on their failure to accommodate her ADA requests for accommodation. (Statement of Facts 16-19, ECF No. 14-3.)  In Tennessee, "unless there is a contract of employment for a definite term, a discharged employee may not recover against an employer for breach of contract

because there is no contractual right to continued employment." *Forrester v. Stockstill*, 869 S.W.2d 328, 330 (Tenn. 1994). Additionally, in Tennessee, there is a presumption that an employee is an employee at will, and this presumption can be overcome "by specific language guaranteeing a definite term of employment." *Davis v. Conn. Gen. Life Ins. Co.*, 743 F. Supp. 1273, 1280 (M.D. Tenn. 1990).

Here, there are no allegations that Gamble was employed for a specific term or that there was ever an express contract between her and Sitel. Gamble has not overcome the presumption that she is an at-will employee because she does not plead any specific language guaranteeing a definite term of employment. Gamble has not attached the alleged contract to her amended complaint. Moreover, even if such a contract existed, the allegations in the amended complaint are insufficient to indicate that such a contract contained a provision requiring Sitel to accommodate Gamble's requests for accommodations. Gamble's breach of contract claim is implausible, and the court recommends dismissal for failure to state a claim.

In Claim I, Gamble also purports to set forth a claim of negligence. (Statement of Facts 16, ECF No. 14-3.) To state a negligence claim Gamble must allege the following elements: (1) a duty of care owed to her by Sitel; (2) conduct falling below the applicable standard of care that amounts to a breach of that duty; (3) an injury or loss; (4) cause in fact; and (5) proximate, or legal,

cause." *McClung v. Delta Square Ltd. P'ship*, 937 S.W.2d 891, 894 (Tenn. 1996) (citing *McCall v. Wilder*, 913 S.W.2d 150, 153 (Tenn. 1995)). Again, Gamble has not plausibly alleged that Sitel owed her a duty to accommodate her ADA accommodation requests. It appears that Gamble maintains such duty arose from an alleged contract between her and Sitel, (*See* Statement of Facts 16, ECF No. 14-3). For the reasons discussed above, however, Gamble has not plausibly plead that a contract existed or that such a contract was breached by Sitel. Moreover, Gamble states that Sitel "sought [] intentional[ly] and deliberately to hurt" Gamble, which squarely conflicts with a claim for negligence or negligence *per se*. (*See* Statement of Facts 16, ECF No. 14-3.)

In Claim II, Gamble purports to set forth claims against Sitel for "non-promotion," "punitive write-ups," "wrong performance score," "wrongful displacement of shift bids," and "harassment." (Statement of Facts 17, ECF No. 14-3.) In her original complaint, Gamble initially alleged that the above adverse employment actions taken by Sitel constituted gender discrimination. (*See* Statement, ECF No. 1-2.) After screening Gamble's original complaint pursuant to 28 U.S.C. § 1915(e)(2), this court recommended dismissal of Gamble's Title VII gender discrimination claim against Sitel. (Report & Recommendation 9-12, ECF No. 9.) The presiding district judge adopted this court's recommendation and dismissed with prejudice Gamble's Title VII gender discrimination claim against

Site.  (Order 16, ECF No. 11.)  Therefore, to the extent Gamble's amended complaint purports to set forth another gender discrimination claim against Sitel based on the above adverse employment actions, the court recommends dismissal of such claim for the reasons set forth in the court's initial Report and Recommendation for *Sua Sponte* Dismissal.

Lastly, to the extent Gamble's amended complaint purports to set forth a disability discrimination claim against Sitel, it is recommended that the claim be dismissed for failure to state a claim for the reasons set forth in the Order Adopting Magistrate's Report and Recommendation.  (*Id.* at 7-13.)

### III.    RECOMMENDATION

For the foregoing reasons, it is recommended that Gamble's breach of contract, negligence, Title VII gender discrimination, and ADA disability discrimination claims against Sitel in the amended complaint be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim on which relief may be granted and that Gamble's claims against Farmer in the amended complaint be dismissed for failure to state a claim.  Thus, the only surviving claims are Gamble's ADA failure to accommodate claim against Sitel based on her two requests for accommodation and Gamble's ADA retaliation claim against Sitel.

The court recommends that the Clerk be directed to issue process for Sitel and to deliver that process to the marshal for service along

with a copy of the amended complaint (ECF No. 14), this Report and Recommendation, and any order regarding this Report and Recommendation; that service be made on Sitel pursuant to Rule 4(h)(1) of the Federal Rules of Civil Procedure;[5] and that all costs of service be advanced by the United States.

It is further recommended that Gamble be ordered to serve a copy of every document filed in this cause on the attorney for Sitel, make a certificate of service on every document filed, familiarize herself with the Federal Rules of Civil Procedure and this court's local rules,[6] promptly notify the Clerk of any change of address or extended absence, and be warned that failure to comply with these requirements, or any other order of the court, may result in the dismissal of her case without further notice.

Respectfully submitted this 6th day of July, 2016.


s/Diane K. Vescovo
DIANE K. VESCOVO
CHIEF UNITED STATES MAGISTRATE JUDGE



NOTICE

Within fourteen (14) days after being served with a copy of this report and recommended disposition, a party may serve and file

---

[5] The address for Sitel provided by Gamble in the amended complaint is 3102 West End Avenue, Nashville, TN 37203.

[6] A free copy of the Local Rules may be obtained from the Clerk. The Local Rules are also available on the court's website at www.tnwd.uscourts.gov/pdf/content/LocalRules.pdf.

written objections to the proposed findings and recommendations.  A party may respond to another party's objections within fourteen (14) days after being served with a copy.  Fed. R. Civ. P. 72(b)(2). Failure to file objections within fourteen (14) days may constitute a waiver of objections, exceptions, and further appeal.